# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CIVIL ACTION NO. 2:18-CR-73** |
| v. : | **(Chief Judge Conner)** |
| **CLARENCE HOFFERT,** : | |
| **Defendant** : | |

## MEMORANDUM

Presently before the court in the above-captioned action is a motion (Doc. 26) to dismiss the indictment by defendant Clarence Hoffert ("Hoffert"). Hoffert seeks dismissal of all charges against him pursuant to First and Fifth Amendments to the United States Constitution. For the reasons that follow, the court will deny Hoffert's motion.

## I. Factual Background & Procedural History

Hoffert is currently serving a 15 to 34 year sentence for convictions arising out of the Court of Common Pleas of Lebanon County, Pennsylvania. (See Doc. 26-1 at 2; Doc. 26-3 at 2). Beginning in September 2012, Hoffert sought copies of his original sentencing order and other documents associated with his conviction and commitment to the Pennsylvania Department of Corrections. (See Doc. 26-1 at 2). In October 2012, Hoffert requested a copy of his sentencing order with the court seal affixed from the Pennsylvania Office of Open Records. (Id. at 6). That office denied Hoffer's request on the ground that the record Hoffert sought did not exist. (Id. at 8-9). Hoffert's appeal of this decision was denied. (Id. at 11; Doc. 26-2 at 8-9). Hoffert also corresponded with the Pennsylvania Bureau of Contracts e-Library at

the Treasury Department, seeking any contractual documents between himself and the Commonwealth of Pennsylvania that might justify his incarceration. (Doc. 26-2 at 11-12). The Treasury Department responded that "no contracts [were found] between [Hoffert] and any government agency or the Commonwealth of Pennsylvania." (Id. at 14-15).

On June 19, 2013, Hoffert filed a *pro se* civil rights complaint in the Western District of Pennsylvania pursuant to 42 U.S.C. § 1983, seeking "compensation for [his] confinement and immediate unbiased release from confinement." (Doc. 26-3 at 2-4). Hoffert claimed that state officials failed to comply with Pennsylvania law requiring an inmate's correctional institution to receive, *inter alia*, a written, sealed sentencing order and sentencing colloquy from the county court. (Id. at 22-24 (citing 42 PA. CONS. STAT. § 9764(b)). Hoffert sought damages of $3,500 per day for each day of alleged unlawful confinement. (Id. at 23). The court denied Hoffert's motion for protection from abuse and then dismissed his complaint for various pleading deficiencies. (Id. at 46); Hoffert v. Pennsylvania, No. 13-162, 2014 WL 4262166 (W.D. Pa. Aug. 27, 2014). The Third Circuit Court of Appeals denied Hoffert's petition for writ of mandamus, see In re Hoffert, 588 F. App'x 105 (3d Cir. 2015) (*per curiam*), and affirmed the dismissal of Hoffert's complaint on appeal, Hoffert v. Pennsylvania, No. 13-162, Doc. 42 (W.D. Pa. Jan. 6, 2015).

Hoffert next submitted an "Affidavit Notice Demanding Setoff of Account" dated March 26, 2015 to the Secretary of the Treasury in San Juan, Puerto Rico. (Doc. 26-4 at 32-33). He requested the secretary's "intervention at correcting the record by paying the bond to setoff the account charged against the legal fiction

U.S. vessel CLARENCE HOFFERT by the Lebanon County Court of Common Pleas." (Id. at 33; see id. at 35). On August 27, 2015, Hoffert filed a claim for damage, injury, or death with the United States Department of Justice, Civil Division, Torts Branch, seeking $7,396,800,000.00 ($1.6 million per day) for his alleged unlawful incarceration. (Doc. 26-5 at 2). The civil division denied Hoffert's administrative tort claim, observing that alleged wrongful acts by state employees are not compensable under the Federal Tort Claims Act. (Id. at 11).

On August 4, 2017, Hoffert submitted a "Claim of Commercial Lien Affidavit [and] Notice of Non-Judicial Proceeding" to the Erie County Recorder of Deeds. (Id. at 19). This document identified five federal officials and employees—each of whom was connected to Hoffert's various judicial and administrative filings—who were "being liened for a minimum of $650,000.00 U.S. Dollars each" for failure to comply with Pennsylvania law and ignoring alleged unconstitutional sanctions imposed on Hoffert. (Id. at 20). This purported commercial lien document was "intended to seize all real and movable property of the [five federal] Lien Debtors." (Id.) The document concluded by claiming that each of the five individuals is individually liable for $8,000,000.00 in damages for a combined settlement value of $56,000,000.00.[1] (Id. at 22). On November 14, 2017, Hoffert asked the United States Marshals Service to "serv[e] each lien debtor with a Distraint Warrant and to begin collection/liquidation of all of their movable assets." (Doc. 26-6 at 9). On January

---

[1] The document identified seven individuals by name, but only five of them were federal officials or employees pursuant to 18 U.S.C. §§ 1114 and 1521. (Doc. 26-5 at 19).

3

30, 2018, two marshals interviewed Hoffert to discuss the various papers he submitted in conjunction with his commercial lien document and subsequent request for service of "distraint warrants." (See Doc. 26-6 at 19). Hoffert sent the marshals a letter thanking them for meeting with him regarding the liens. (Id.)

On March 20, 2018, a federal grand jury sitting in Pittsburgh, Pennsylvania, returned an indictment against Hoffert, charging him with five counts of filing or attempting to file a false lien or encumbrance against the real or personal property of an officer or employee of the federal government, in violation of 18 U.S.C. § 1521. Hoffert filed the instant motion (Doc. 26) to dismiss the indictment. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

A motion to dismiss a criminal indictment may be brought at any time before trial. See FED. R. CRIM. P. 12(b)(3). A motion to dismiss the indictment may allege a defect in instituting the prosecution, including improper venue, violation of the constitutional right to a speedy trial, or selective prosecution. See FED. R. CRIM. P. 12(b)(3)(A). A motion to dismiss may also be premised on perceived substantive deficiencies, including duplicity or multiplicity in the indictment, lack of specificity, improper joinder, or failure to state an offense. See FED. R. CRIM. P. 12(b)(3)(B). In the context of a motion to dismiss, the court is obliged to test the sufficiency of the government's *allegata* but not the sufficiency of the government's *probata*. United States v. Huet, 665 F.3d 588, 594-95 (3d Cir. 2012). The court must decide every pretrial motion before trial unless good cause exists to defer its ruling. See FED. R. CRIM. P. 12(d).

4

**III.    Discussion**

Congress enacted Section 1521 of the Court Security Improvement Act of 2007 to "penalize individuals who seek to intimidate and harass Federal judges and employees by filing false liens against their real and personal property." H.R. Rep. No. 110-218, pt. 1, at 17 (2007).  Under Section 1521, it is unlawful for anyone to

> file[], attempt[] to file, or conspire[] to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of [any officer or employee of the United States], on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation.

18 U.S.C. § 1521; see id. § 1114.  Hoffert contends that Section 1521's scienter requirement offends the First Amendment's overbreadth doctrine and the statute is therefore unconstitutional on its face and as applied to him.  He also argues that the statute is unconstitutionally vague as pertains the scienter and property elements.  The court will address these arguments *seriatim*.

   **A.    Unconstitutionally Overbroad**

Courts may invalidate legislation restricting free speech as overbroad when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." United States v. Stevens, 559 U.S. 460, 473 (2010) (internal quotation marks omitted) (quoting Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n.6 (2008)); see also Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975).  Invalidation of a statute as overbroad is "strong medicine" and "is not to be casually employed." United States v. Williams,

553 U.S. 285, 293 (2008) (internal quotation marks and citations omitted); see also Wash. State Grange, 552 U.S. at 449 n.6. A court conducting an overbreadth analysis first construes the challenged statute and then determines if the statute, as construed, "criminalizes a substantial amount of protected expressive activity." Williams, 553 U.S. at 293, 297.

An individual violates Section 1521 when he or she files a false lien or encumbrance "knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1521. Hoffert claims that inclusion of the "having reason to know" mental state permits a conviction under a purely objective, "reasonable person" standard. (Doc. 27 at 13-14). He avers that the "reasonable person" standard is a constitutionally infirmed criminal *mens rea* that proscribes a substantial amount of protected speech. (Id. at 14-15).

The Third Circuit has not considered the constitutionality of Section 1521's mental state requirement, nor has it addressed the reason-to-know *mens rea* more broadly. The parties' arguments concenter on United States v. Williamson, 746 F.3d 987 (10th Cir. 2014), and the case law referenced therein. In Williamson, the Tenth Circuit held that the "having reason to know" standard encompassed a subjective and objective component. Id. at 994. Under this standard, the court stated that a jury may convict a defendant of violating Section 1521 "if a reasonable person who possessed the information possessed by the defendant would have the requisite knowledge of falsity." Id. (citing United States v. Munguia, 704 F.3d 596, 602-03 (9th Cir. 2012); United States v. Saffo, 227 F.3d 1260, 1268-69 (10th Cir. 2000)).

6

Multiple circuits have similarly interpreted the reason-to-know standard in the context of our controlled substance statute, 21 U.S.C. § 841.[2] In United States v. Saffo, 227 F.3d 1260 (10th Cir. 2000), the Tenth Circuit held that the reason-to-know standard is a constitutionally sufficient *mens rea* requirement "involv[ing] a subjective inquiry," which focuses on what facts the defendant knew. Saffo, 227 F.3d at 1268. Relying on Saffo, the Ninth Circuit likewise determined that the reason-to-know standard tasked the jury with "evaluat[ing] scienter through the lens of the particular defendant on trial," not what the hypothetical person would have reason to know. Munguia, 704 F.3d at 603 (citations omitted). Both courts clarified that the reason-to-know standard, sometimes referred to as constructive knowledge, is akin to actual knowledge. Munguia, 704 F.3d at 603 (quoting United States v. Johal, 428 F.3d 823, 828 (9th Cir. 2005)); Saffo, 227 F.3d at 1269.

We are persuaded by the *ratio decidendi* of the Saffo and Munguia decisions. The reason-to-know standard comports with the requirement that a defendant act in bad faith or possess a "guilty mind" to be found criminally liable. See Saffo, 227 F.3d at 1269 (quoting Gorin v. United States, 312 U.S. 19, 27-28 (1941)). Under this standard, a jury must be instructed to "consider the knowledge and sophistication of the particular defendant on trial, not that of a hypothetical reasonable person." Munguia, 704 F.3d at 603. In other words, we apply a hybrid standard: a jury may convict the defendant under Section 1521 if a reasonable person, having the

---

[2] Congress frequently employs the "knowing or having reason to know" scienter standard in criminal statutes. See Saffo, 227 F.3d at 1268 (collecting statutes). Some statutes employ the synonymous phrase "knowing, or having reasonable cause to *believe*." See, e.g., 21 U.S.C. § 960(d)(3) (emphasis added).

7

defendant's characteristics—in essence, standing in the defendant's shoes—would have the requisite knowledge that the liens or encumbrances at issue were false. See Munguia, 704 F.3d at 602-603 (citing Saffo, 227 F.3d at 1268-69); see also Williamson, 746 F.3d at 994.

Hoffert asseverates that this reading of the reason-to-know standard criminalizes his conduct regardless of whether he acted in bad faith. (Doc. 27 at 13-14). In support of this position, Hoffert points to the Williamson decision, wherein the Tenth Circuit noted that a defendant can be found guilty under Section 1521 "even if he honestly believed that he filed a proper lien so long as the belief was not a reasonable one." See Williamson, 746 F.3d at 994. The court rejected a good-faith instruction as "inconsistent with the objective component of the having-reason-to-know requirement." Id. at 994. We decline to adopt the Tenth Circuit's reasoning on this narrow issue. Inherent in the reason-to-know standard is the requirement that the government prove that the defendant acted in bad faith. See Saffo, 227 F.3d at 1268 (quoting Gorin, 312 U.S. at 27-28). We find that a good-faith-defense instruction is consistent with the reason-to-know *mens rea* standard and that such an instruction will further encourage the jury to consider the knowledge and sophistication of the particular defendant on trial.

Section 1521 does not burden a substantial amount of protected speech. Hoffert's concerns that the statute penalizes individuals—specifically incarcerated persons—who are "not . . . sophisticated in the law" are squarely addressed by our construction of the statute's scienter requirement and by the availability of a good-faith-defense instruction. (See Doc. 27 at 14; Doc. 36 at 8 & n.2). Moreover, fraud is

not protected speech under the First Amendment.  See Illinois, *ex rel.* Madigan v. Telemarketing Assocs., Inc., 538 U.S. 600, 612 (2003).  Section 1521 clearly proscribes the knowing filing of false or fraudulent liens to target federal employees for performing their official duties and is not facially overbroad.

Hoffert also argues that the statute is overbroad as applied to him.  Under the overbreadth doctrine, a litigant may "benefit from the statute's unlawful application *to someone else*" even if the statute could be constitutionally applied to the litigant.  Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 483 (1989).  An as-applied overbreadth claim is not cognizable under the First Amendment because such a claim is "inherently facial."  Stoltzfoos v. Sec'y of Pa. Dep't of Corr., 733 F. App'x 34, 39 (3d Cir. 2018) (nonprecedential) (citing Fox, 492 U.S. at 482-83); cf. Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin., 302 F. App'x 115, 118 (3d Cir. 2008) (nonprecedential).  We will deny Hoffert's as-applied overbreadth challenge to Section 1521.

### B. Unconstitutionally Vague

The vagueness doctrine is borne of the Due Process Clause of the Fifth Amendment.  See Williams, 553 U.S. at 304.  It requires the government to advise precisely what conduct is impacted so that the public may tailor its behavior accordingly.  See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99 (1982).  Legislation falls short of this mandate when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  FCC v. Fox TV Stations, Inc., 567 U.S. 239, 253 (2012) (quoting

9

Williams, 553 U.S. at 304); United States v. Fullmer, 584 F.3d 132, 152 (3d Cir. 2009); see also Vill. of Hoffman Estates, 455 U.S. at 498. The possibility that an incriminating fact may "sometimes be difficult to determine" does not render a statute vague; rather, "the indeterminacy of precisely what that fact is" will void a statute for vagueness. Williams, 553 U.S. at 306. When free speech is implicated, the Constitution demands "rigorous adherence" to these due process requirements. FCC, 567 U.S. at 253-54. Hoffert identifies two statutory elements that purportedly render Section 1521 void for vagueness, to wit: the scienter requirement and the real or personal property element.

Section 1521 clearly criminalizes the conduct of a person who files a false lien or encumbrance against the property of a federal official for performance of that official's duties, knowing or having reason to know that such lien or encumbrance is in fact false or contains materially false or fraudulent representations.[3] See 18 U.S.C. § 1521. The reason-to-know standard "requires those prosecuted to have acted in bad faith," thereby exempting innocent or inadvertent conduct from criminal prosecution. See Gorin, 312 U.S. at 27-28; see also Rojas-Garcia v. Ashcroft, 339 F.3d 814, 822–23 (9th Cir. 2003); United States v. Featherston, 461 F.2d 1119, 1121 (5th Cir. 1972) (quoting Gorin, 312 U.S. at 27-28); Nat'l Mobilization

---

[3] Hoffert directs the court to United States v. Moyer, 674 F.3d 192 (3d Cir. 2012), which concerned a vagueness challenge to 18 U.S.C. § 1519. In Moyer, the Third Circuit held that Section 1519 was not unconstitutionally vague because a defendant could only be convicted for acting "knowingly and with the purpose of doing that which the statute prohibits." Id. at 211-12. Hoffert's reliance on Moyer is misplaced. Section 1519 does not contain a reason-to-know standard. See 18 U.S.C. § 1519. Consequently, the Moyer court had no occasion to address whether the reason-to-know standard was unconstitutionally vague.

Comm. to End War in Viet Nam v. Foran, 411 F.2d 934, 937 (7th Cir. 1969). As discussed *supra*, the reason-to-know standard tasks a jury with first determining the defendant's knowledge and sophistication, and then whether a reasonable person possessing that knowledge and sophistication would have reason to know the at-issue lien or encumbrance was false. Section 1521's *mens rea* requirement is sufficiently definite to place a person of ordinary intelligence on fair notice of what is prohibited.

An individual violates Section 1521 by filing a false lien or encumbrance "against the real or personal property" of a federal official or employee. 18 U.S.C. § 1521 (citing 18 U.S.C. § 1114). Hoffert contends that the absence of a statutory definition of "real or personal property" renders Section 1521 unconstitutionally vague. (Doc. 27 at 18-20). When interpreting a statute, courts assign a term its ordinary meaning absent a statutory definition, Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012) (citation omitted), and consider the relevant words "in reference to the statutory context, structure, history, and purpose," Abramski v. United States, 573 U.S. __, 134 S. Ct. 2259, 2267 (2014) (citation omitted).

Real property and personal property have well-settled legal definitions. Personal property constitutes "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Property*, BLACK'S LAW DICTIONARY (10th ed. 2014). Real property, by contrast, is "[l]and and anything growing on, attached to, or erected on it" including incorporeal rights such as easements. Id. The Supreme Court recognized that when Congress uses the term "property" broadly, it "aims to reach every species of right or interest protected by law and

11

having an exchangeable value." Drye v. United States, 528 U.S. 49, 56 (1999) (internal quotation marks omitted) (quoting Jewett v. Commissioner, 455 U.S. 305, 309 (1982)); see also United States v. Monsanto, 491 U.S. 600, 607 (1989).

The liens at issue in the matter *sub judice* state that the federal employees are each individually liable for $8 million, for a combined total of $56 million. (Doc. 26-5 at 22). Defense counsel contends that this request is "completely nonsensical" and cannot be construed as "the 'real or personal property' of a federal employee." (Doc. 27 at 18). We disagree. Multiple circuit courts have recognized that Section 1521 criminalizes the filing, attempted filing, or conspiracy to file documents that create false liens or liens containing materially false information against federal employees "without regard to the validity or existence of the identified collateral in such documents." United States v. Neal, 776 F.3d 645, 654 (9th Cir. 2015); see also United States v. Reed, 668 F.3d 978, 984-85 (8th Cir. 2012). We are persuaded by the Ninth Circuit's reasoning that the "real and personal property" element limits the scope of the class of documents prohibited by Section 1521 without regard to any technical deficiencies, or the validity of the collateral identified in said documents. Neal, 776 F.3d at 653-54 (citing Reed, 668 F.3d at, 984-85); see also United States v. Jordan, 851 F.3d 393, 397-98 (5th Cir.), *cert.* denied, 138 S. Ct. 137 (2017) (quoting Neal, 776 F.3d at 653-54). The term "real or personal property" as used in Section 1521 is not unconstitutionally vague.

**IV. Conclusion**

The court will deny Hoffert's motion (Doc. 26) to dismiss the indictment. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: October 4, 2018