# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CIVIL ACTION NO. 2:18-CR-73 |
| v. | : (Chief Judge Conner) |
| **CLARENCE HOFFERT,** | : |
| **Defendant** | : |

## MEMORANDUM

Defendant Clarence Hoffert ("Hoffert") moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (Doc. 78). Hoffert claims that the evidence adduced at trial is insufficient to sustain his five counts of conviction under 18 U.S.C. § 1521. We will deny Hoffert's motion.

## I. Factual Background & Procedural History

On March 20, 2018, a federal grand jury sitting in Pittsburgh, Pennsylvania, returned an indictment charging Hoffert with five counts of filing or attempting to file a false lien or encumbrance against the real or personal property of an officer or employee of the federal government, in violation of 18 U.S.C. § 1521. Each count represented one of the five federal officers and employees named in the false lien and identified as victims in this case. (See Doc. 1 at 1; Gov't Ex. 10 at 8). A four-day jury trial commenced on October 9, 2018. At the close of the government's case in chief, Hoffert moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion, and the jury convicted Hoffert on all five counts. Following his conviction, Hoffert timely renewed his motion for judgment of acquittal. The motion is fully briefed and ripe for disposition.

## II. <u>Legal Standard</u>

On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial. United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also United States v. Freeman, 763 F.3d 322, 343 (3d Cir. 2014). The court must view the evidence in a light most favorable to the prosecution and must deny the motion "if there is substantial evidence . . . to uphold the jury's decision." Caraballo-Rodriguez, 726 F.3d at 430 (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)). Under this highly deferential standard of review, it is not the court's task to "act as the thirteenth juror," weigh credibility, assign weight to evidence, or "substitute [its] judgment for that of the jury." Id. (citations omitted). The decision to overturn a conviction based on insufficient evidence may only be made "where the prosecution's failure is clear," United States v. Leon, 739 F.2d 885, 890 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), or where the verdict "fall[s] below the threshold of bare rationality," Caraballo-Rodriguez, 726 F.3d at 431.

## III. <u>Discussion</u>

Section 1521 of Title 18 of the United States Code criminalizes the filing or attempted filing of a false lien or encumbrance to retaliate against a federal officer or employee. See 18 U.S.C. § 1521. To sustain a conviction under Section 1521, the government must prove beyond a reasonable doubt that: (1) the defendant filed or

2

attempted to file a false lien or encumbrance in a public record; (2) the lien or encumbrance was filed or intended to be filed against the real or personal property of an officer or employee of the United States government; (3) the defendant filed or attempted to file the false lien on account of the performance of official duties by the federal officer or employee; and (4) the defendant knew or had reason to know that the lien or encumbrance was false or contained materially false, fictitious, or fraudulent statements or representations.  See id.  Hoffert challenges the sufficiency of the government's evidence as to the first and fourth elements.

**A.    Filed or Attempted to File a False Lien**

Hoffert argues that the government failed to prove that the document he filed or attempted to file in Erie County was a valid lien or that the lien was false.  (Doc. 79 at 3-5).  This argument is without merit.  Section 1521 clearly criminalizes the filing or attempted filing of "any false lien or encumbrance" and does not require that the document filed be technically valid.  18 U.S.C. § 1521; United States v. Jordan, 851 F.3d 393, 398 (5th Cir. 2017); United States v. Neal, 776 F.3d 645, 653 (9th Cir. 2015).  In Neal, the Ninth Circuit aptly noted that the statute's language reaches "documents of the sort that *could* create false liens and encumbrances against federal employees" irrespective of a document's validity or the existence of the collateral identified therein.  Neal, 775 F.3d at 654 (emphasis added).  The court further observed that filing offices often lack authority to refuse fraudulent or otherwise invalid documents.  Id. at 653; see also United States v. Reed, 668 F.3d 978, 984 n.3 (8th Cir. 2012).

3

The record is replete with evidence establishing that the at-issue document was a false lien or encumbrance. Hoffert styled his document as a "Claim of Commercial Lien Affidavit" wherein he identified three federal judges and two executive branch employees as "LIEN DEBTORS," each of whom purportedly owed Hoffert $8 million dollars. (Gov't Ex. 10 at 3, 6, 8). Each named victim testified that he or she never had any financial dealings with Hoffert nor owed him any sum of money for any reason. (10/9/18 Tr. 103:21-104:1; 10/10/18 Tr. 12:1-10, 57:4-13, 83:11-21, 112:16-25). Defense counsel played a video recording of Hoffert's January 30, 2018 interview with two United States deputy marshals, (10/11/18 Tr. 84:6-85:17), during which Hoffert acknowledged that he wanted the marshals to seize and liquidate the property of the lien debtors, (Def Ex. 143 at 17-18; see Gov't Ex. 28; Def Exs. 131-32).

The record also contains ample evidence that the commercial lien affidavit was false. Hoffert misquoted Section 3571 of Title 18 of the United States Code in his commercial lien affidavit. (See Gov't Ex. 10 at 6). Section 3571 permits courts to fine defendants found guilty of a misdemeanor or felony offense. See 18 U.S.C. § 3571. Hoffert stated in his commercial lien affidavit that each purported lien debtor committed "thirty-two (32) different crimes" and then utilized the publicly available Section 3571 to calculate that each lien debtor was responsible for $8 million. (Gov't Ex. 10 at 6; 10/11/18 Tr. 97:21-98:23). None of the identified federal officers or employees were convicted for committing crimes against Hoffert. A rational trier of fact could conclude that Hoffert's commercial lien affidavit was false or contained materially false statements of law and fact.

Hoffert further contends that the government failed to prove that he attempted to file a false lien because "he sent it to an office that did not accept [the lien] for filing." (Doc. 78 at 5). This argument is likewise unavailing. To convict a defendant of attempt, the government must adduce evidence that the defendant "(1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believe[d] them to be, constitute[d] a substantial step in the commission of the crime." United States v. Tykarsky, 446 F.3d 458, 469 (3d Cir. 2006) (citation omitted); see also United States v. Manzo, 636 F.3d 56, 66 (3d Cir. 2011). Hoffert mailed his commercial lien affidavit to the Recorder of Deeds Office at the Erie County courthouse. (Gov't Ex. 10 at 1; 10/11/18 Tr. 69:7-9). His cover letter specifically requests that the enclosed documents be recorded "as a Public Record," and Hoffert testified that he intended the commercial lien affidavit to be recorded as same. (Gov't Ex. 10 at 1; 10/11/18 Tr. 72:12-20).

Hoffert is correct that the Recorder of Deeds Office is responsible for recording only liens on real property. (See 10/9/18 Tr. 149:2-7, 149:21-150:20). It is the prothonotary's office, also housed within the Erie County courthouse, that processes liens against individuals. (Id. at 151:10-21, 175:3-5, 22-24). Nonetheless, based on this evidence, a rational juror could easily conclude that Hoffert, under the circumstances as he knew them, believed he had taken appropriate action to file the

false lien.[1]  The record contains sufficient evidence to support the first element of Hoffert's convictions under Section 3571.

## B. Knew or Had Reason to Know

Hoffert avers that, based on his particular knowledge, sophistication, and understanding, the government failed to show that he knew or had reason to know that the document was a false lien. (Doc. 79 at 6).  He claims that he believed the commercial lien affidavit to be valid and "filed the document in good faith." (Id.)  We find the evidence adduced at trial is more than sufficient for a rational trier of fact to find Hoffert knew or should have known that the document was false.

Prior to filing his commercial lien affidavit, Hoffert engaged in a course of conduct to challenge his incarceration for state criminal offenses.  In September 2012, he sought copies of his original sentencing and commitment orders from the clerk of court in Lebanon County for his personal records.  (Gov't Ex. 1R at 2).  In a letter to the clerk, Hoffert acknowledged that he had "approximately 5 years and 7 months to go to reach [his] minimum sentence" and represented that he intended to use these documents when he became "eligible for parole" to prove that he served

---

[1] Hoffert also suggests that the document's "nonsensical" nature, and the fact that none of the alleged lien debtors were at risk of having their property encumbered, together undermine the government's position that mailing the document to the Recorder of Deeds constitutes a substantial step. (Doc. 79 at 5-6). We disagree.  As discussed *supra*, a lien document that is invalid—e.g., because its contents are nonsensical—may still be false and filed with the requisite intent. See Neal, 776 F.3d at 653.  And the government correctly notes that Section 1521 criminalizes the filing or attempted filing of a false lien or encumbrance without consideration as to whether the false lien actually impairs the federal officer's or employee's property.  See Reed, 668 F.3d at 984-85.

6

his minimum sentence. (Id.) When various state agencies were unable to produce a sealed copy of his commitment order, Hoffert sought release from incarceration by filing a civil rights action in the Western District of Pennsylvania. (See Gov't Ex. 2). In dismissing his case, both the district court and the Third Circuit on appeal advised Hoffert that any attack on the lawfulness of his incarceration must be brought in a habeas corpus petition. (Gov't Ex. 3 at 5; Gov't Ex. 5 at 5). Hoffert next filed a claim for damages with the Civil Division Torts Branch of the Department of Justice seeking more than $7.3 billion in compensation for his purported unlawful arrest, conviction, and incarceration. (See Gov't Ex. 6). This request was denied on August 4, 2016, and Hoffert was advised that he could challenge this denial in an appropriate district court. (Gov't Ex. 7 at 1). Hoffert then drafted a letter to the director of the Torts Branch, James Touhey, Jr. ("Touhey"), referring to Touhey as "another remedy obstruction" and threatening to add Touhey to the claim for damages. (Gov't Ex. 8 at 2).

Hoffert thereafter attempted to file the document entitled "Claim of Commercial Lien Affidavit" dated August 4, 2017, seeking damages from various federal officers and employees for failing to recognize his claim that he was being unlawfully incarcerated because his institution lacked a proper, sealed commitment order. (Gov't Ex. 10 at 5, 8; see 10/11/18 Tr. 55:14-56:11). The commercial lien affidavit sought $8 million each from five federal judges and executive employees under Section 3571 which, as noted *supra*, permits courts to fine defendants found guilty of a misdemeanor or felony offense. (Gov't Ex. 10 at 6, 8); see 18 U.S.C. § 3571. Hoffert testified that he understood that a felony was a criminal offense and that

7

only the government could bring criminal charges against a person. (10/11/18 Tr. 99:1-17). This record supports a rational inference by the jury that Hoffert knew or should have known these federal officers and employees were not convicted felons who owed him criminal fines for denying his various requests for release from incarceration.

Hoffert testified that he chose not to follow the direction of the district court and Third Circuit by filing a habeas petition to challenge his incarceration—instead filing the commercial lien affidavit—because he did not want to "sit around" waiting for the courts to address his arguments. (Id. at 99:18-101:2). On cross-examination, the government asked Hoffert why he filed the document. (Id. at 71:5-6). Hoffert responded that he "just wanted the notoriety" and that he "really wasn't looking to get any type of monetary value out of anything." (Id. at 71:7-13). The jury may have reasonably inferred from Hoffert's filings and testimony that he knew his commercial lien affidavit was false and that he acted in bad faith by attempting to file the document against the five federal officers and employees. For all of these reasons, we find that the record contains ample evidence to support the fourth element of Hoffert's Section 3571 convictions.

## IV. Conclusion

The court will deny Hoffert's motion (Doc. 78) for judgment of acquittal as to all five counts of conviction. An appropriate order shall issue.

          /S/ CHRISTOPHER C. CONNER
          Christopher C. Conner, Chief Judge
          United States District Court
          Middle District of Pennsylvania

Dated:    February 1, 2019